Jerome S. GLAZER and Louis A. Glazer

v.

COLONIAL VILLAGE CORPORATION, Shelbourne Towers, Inc. and Guilford Glazer.

Civ. A. No. 4393.

United States District Court
E. D. Tennessee, N. D.
April 20, 1964.

Harold B. Stone, Stone & Bozeman, Knoxville, Tenn., Edward J. Grenier, Jr., Washington, D. C., for plaintiffs.

S. Frank Fowler, Fowler, Rountree & Fowler, Knoxville, Tenn., R. Emmett Kerrigan, Deutsch, Kerrigan & Stiles, Bernard Marcus, New Orleans, La., for defendants.

ROBERT L. TAYLOR, Chief Judge.

Before the Court for consideration is the motion of defendants, Guilford Glazer, Colonial Village Corporation and Shelbourne Towers, Inc., to transfer this action to the United States District Court for the Eastern District of Louisiana or, in the alternative, for a stay of proceedings until similar issues raised by plaintiffs in a counterclaim in Civil Action 11,605 pending in the United States District Court for the Eastern District of Louisiana are finally determined. A similar motion to stay was made by the defendants on the 14th day of June, 1962 and a consent order was entered on June 21, 1962 staying the proceedings until further orders of the Court, with the right of either party to move to lift the stay order or to move to transfer to the District Court in Louisiana. The original complaint in this action was filed on February 13, 1962.

At the time the suit was filed, plaintiffs were residents of Louisiana; defendants, Colonial Village Corporation and Shelbourne Towers, Inc., Tennessee corporations; and defendant, Guilford Glazer, a resident of California. There is no indication that the corporations have ever engaged in business in the State of Louisiana.

The complaint was amended so as to join Gertrude Wallace, a resident of Louisiana, and Frank Diggs, a resident of Tennessee, as party defendants. Gertrude Wallace has not been served with process and is not before the Court.

The motion to transfer is based on Title 28 U.S.C. § 1404(a).[1]

Extensive oral argument was recently heard in which counsel for defendants contended that the Court had the right to transfer the case to the Louisiana Court because the case could have been brought in that Court since venue existed in that Court. Presumably, this argument was based on the premise that the plaintiffs were residents of Louisiana and for that reason they could have brought the suit in the District Court of that State. In support of their arguments, they relied upon the cases of Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960), Continental Grain Co. v. Barge FBL–585, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960), and Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 a case decided by the Supreme Court on March 30, 1964 in which Justice Goldberg wrote the opinion.

In the Blaski case, respondents Blaski and others were residents of Illinois and brought suit for patent infringement in the District Court for the Northern District of Texas against Howell and a

1. "(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil ac-

tion to any other district or division where it might have been brought."

Texas corporation controlled by him in which it was alleged that the defendants were residents of and maintained their only place of business in the City of Dallas in the Northern District of Texas. Defendants moved to transfer the action to the District Court for the Northern District of Illinois. Respondents objected to the transfer on the ground that the defendants did not reside, maintain a place of business, or infringe the patents, in the State of Illinois and could not have been served with process in that District and that the courts of that District lacked venue over the action and ability to command jurisdiction over the defendants, and that, therefore, that District was not a forum in which the respondents had a right to bring the action at the time it was brought and the Court was without power to transfer it to that District. The Court, in sustaining the position of respondents, stated that the phrase "where it might have been brought" could not be interpreted as reading "where it may now be rebrought, with defendants' consent." In that connection, the Court stated:

> "It is not to be doubted that the transferee courts, like every District Court, had jurisdiction to entertain actions of the character involved, but it is obvious that they did not acquire jurisdiction over these particular actions when they were brought in the transferor courts. The transferee courts could have acquired jurisdiction over these actions only if properly brought in those courts, or if validly transferred thereto under § 1404(a). Of course, venue, like jurisdiction over the person, may be waived. A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default. Commercial Casualty Ins. Co. v. Consolidated Stone Co., 278 U.S. 177, 179–180, 49 S.Ct. 98, 99, 73 L.Ed. 252; Neirbo Co. v. Bethlehem Shipbuilding Corp., Ltd., 308 U.S. 165,

60 S.Ct. 153, 84 L.Ed. 167. *But the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff."* (Emphasis added.)

■ The Court stated that inasmuch as the respondents did not have a right to bring the action in the Illinois Court that the transferor court could not transfer the action to that Court. It is our view that the principle announced in this decision is controlling of this case. This is so because none of the defendants could have been served in Louisiana at the time the action was filed and that Court could not command jurisdiction over any of them. Hence, the suit could not have been brought in Louisiana at the time it was filed here in Knoxville and since it could not have been brought in Louisiana, this Court is without power to transfer it there.

The Continental Grain Company case involved an action for damages to cargo from alleged unseaworthiness of the barge which sank in Memphis, Tennessee after it had been loaded with soy beans. A dispute arose over what caused it to sink. The barge owner brought an action for damages in the state court in Memphis, charging that the barge sank because the cargo owner, Continental Grain Company, had been negligent in loading it. The cargo owner later brought suit in the United States District Court in New Orleans against the barge and its owner in a single complaint, charging that the vessel had sunk because of its defects and unseaworthiness, and claiming damages to the cargo. In the meantime, the damage case against the grain company had been removed from the state court to the United States District Court at Memphis. The barge owner, defendant in the New Orleans action, moved to transfer the action to the United States District Court at Memphis under § 1404(a) for the convenience of the

parties and in the interest of justice. The New Orleans District Court found that the efficient administration of justice required the transfer of the case to Memphis since the suits involved the same claims and were between the same parties. The cargo owner argued that the case could not be transferred because the barge had been sued in the New Orleans Court along with the owner and the suit could not be brought against the barge in the Memphis Court since the barge was not located in Memphis at the time the suit was filed. The Supreme Court held that the transfer was proper and that it would be unjust to permit the admiralty action against the barge to prevent the transfer. In that connection, the Court stated that the in rem admiralty proceeding should not prevent a transfer where the failure to transfer would cause unnecessary inconvenience and expense to the parties. The Court stated:

" * * * The crucial issues about fault and damages suffered were identical, whether considered as a claim against the ship or its owner. The witnesses were identical. Thus, while two methods were invoked to bring the owner into court and enforce any judgment against it, the substance of what had to be done to adjudicate the rights of the parties was not different at all. Treating both methods for § 1404(a) purposes for what they are in a case like this —inseparable parts of one single 'civil action'—merely permits or requires parties to try their issues in a single 'civil action' in a court where it 'might have been brought.' " 364 U.S. pp. 26, 27, 80 S.Ct. p. 1475.

Although it appears from the briefs and the oral statements of counsel that some of the issues in the Louisiana action are similar to, or the same as, many of the issues in the case in this Court, there are issues in the case in this Court that are not in the case in the Louisiana Court. Moreover, the parties in the two actions are not the same. This Court is of the opinion that the decision in the Continental Grain Company case is not authority for this Court to transfer the present case to Louisiana.

■ Finally, the facts in the Van Dusen case are that on October 4, 1960 after departing from a Boston airport, a commercial airliner, scheduled to fly from Boston to Philadelphia, crashed into Boston Harbor. As a result of the plunge, over 150 actions for personal injury and wrongful death were instituted against the airlines, various manufacturers, the United States and the Massachusetts Port Authority. In most of the actions, plaintiffs alleged that the crash resulted from the defendants' negligence in permitting the aircraft's engines to ingest some birds. More than 100 actions were brought in the United States District Court for the District of Massachusetts, and more than 45 actions in the United States District Court for the Eastern District of Pennsylvania. In this case, 40 wrongful death actions were brought in the Eastern District of Pennsylvania by personal representatives of victims of the crash. The defendants moved under § 1404(a) to transfer the actions to the District of Massachusetts where it was alleged that most of the witnesses resided and where over 100 other actions were pending. The District Court granted the motion. The Court of Appeals held that the transfer could be granted only if at the time the suits were brought, the plaintiffs had qualified to sue in Massachusetts, the State of the transferee District Court. The Court of Appeals relied in part upon its interpretation of Rule 17(b) of the Federal Rules of Civil Procedure.[2] The Supreme Court re-

2. *"Capacity to Sue or Be Sued.* The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated

versed both the Court of Appeals and the District Court and held that both Courts erred in their assumptions regarding the state law to be applied to an action transferred under § 1404(a). The Court held under § 1404(a) that the transferee District Court must apply the laws of the State of the transferor District Court and that Rule 17(b) must be interpreted so that the capacity to sue would be governed by the laws of the transferor state. The Court stated that even after transfer, the laws of the transferor State will continue to apply. The Court stated, among other things, that a transfer under Section 1404(a) does not effect a change of law "but essentially only to authorize a change of courtrooms." The Court reaffirmed the principle announced in the Blaski case that a transfer cannot be made unless the suit could have been brought in the transferee court at the time the action was filed in the transferor court.

The Court is forced, reluctantly, to conclude that it is without authority to transfer the case to the District Court in Louisiana.

■ This brings us to the question of whether the case should be stayed. This case, as previously indicated, has been pending in the Court since February 13, 1962. Judging from the recent heated arguments of counsel, an adjudication of the case pending in the Louisiana Court will not settle anything in the present case. There is no indication when the Louisiana case will be terminated. A further stay of this case would, in the opinion of the Court, violate the spirit, if not the letter, of the Federal Rules of Civil Procedure which were created "to secure the just, speedy, and inexpensive determination of every action." Rule 1, F.R.Civ.P.

The Court indicated to counsel during the pre-trial hearing that it was thinking seriously of dismissing the suit inasmuch as some of the same charges against the defendant Guilford Glazer in this case are similar to ones made by plaintiffs against him in the cross suit in the Louisiana Court. Since that time, the Court has given fuller thought to the matter and has examined cases dealing with dismissal without trial and has reached the conclusion that it would not be justified in dismissing plaintiffs' suit without giving them a day in Court on the merits. Moreover, the record indicates that no one has made a written motion to dismiss.

Finally, counsel for some of the defendants indicated that a trial in this Court would involve numerous exhibits pertaining to some 16 or 18 corporations in which the three Glazer brothers are involved and thus consume several weeks of trial time. The main charges in this case are that Guilford Glazer used his official and stockholder's power in the Shelbourne Towers, Inc. and Colonial Village Corporation to wrongfully misappropriate funds of those corporations and the proof in this case should be confined to the alleged wrongful acts of Guilford Glazer in relation to these two corporations. If the proof is confined to what the Court at this time considers the relevant issues, the trial should be simple and short.

It is the conclusion of the Court that the motion of defendant Guilford Glazer and the two defendant corporations to transfer the case to the Louisiana Court or in the alternative to stay pending the outcome of the Louisiana litigation must be overruled.

An order has this day been passed to the Clerk overruling the motion to transfer or in the alternative to stay the proceedings.

association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., §§ 754 and 959(a)."